Richard STANLEY Plaintiff,

v.

**UNIVERSITY OF TEXAS MEDICAL BRANCH, Galveston, Texas Defendant.**

No. CIV.A. G–02–508.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 17, 2003.

Mark E Roberts, Houston, TX, for Richard Stanley, plaintiff.

Craig H Russell, Assistant Atty Gen, General Litigation Div, Austin, TX, for University of Texas Medical Branch Galveston Texas, defendant.

## FINAL JUDGMENT DISPOSING OF ALL CLAIMS AND GRANTING IN PART DEFENDANT'S MOTION FOR SANCTIONS

KENT, District Judge.

Plaintiff Richard Stanley ("Plaintiff") brought this action against Defendant University of Texas Medical Branch ("UTMB" or "Defendant") alleging that UTMB violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, by perpetuating a hostile work environment toward African–American males and by retaliating against him. On August 15, 2003, the Court granted Defendant's Motion for Summary Judgment and dismissed the case. In the Court's Order, it granted leave to Defendant to submit a Motion for Sanctions, which it did on September 5, 2003. In consideration of the Motion and Plaintiff's timely response thereto, Defendant's Motion is **GRANTED IN PART**, and judgment hereby issues on all claims

## I. BACKGROUND INFORMATION

Although the facts of this case have been laid out in the Court's previous Order

Granting Summary Judgment, they warrant brief repetition as they apply to this ruling. Plaintiff was hired by UTMB as a licensed, registered nurse at the Larry Gist State Jail in May of 1997. At the time he was hired, Plaintiff was the only male nurse at the Larry Gist State Jail. Unfortunately, the Parties' relationship became quickly strained by what UTMB perceived to be inappropriate behavior by Plaintiff. On April 9, 1998, Plaintiff was placed on six months probation for eight cited instances, most of which were charges related either to insubordination or inappropriate behavior toward female coworkers. Then, on December 3, 1998, Plaintiff was again placed on six months probation for unprofessional behavior. On November 19, 2001, Plaintiff was suspended for recklessly endangering an insulin-dependent patient's health after refusing to administer insulin to him. On December 21, 2001, Nurse Linda Northen filed a sexual harassment complaint against Plaintiff, which a UTMB investigation found to be meritorious. Based on the above-referenced incidents, Plaintiff was informed that his employment would be terminated effective January 16, 2002. Plaintiff tendered a letter of resignation on January 17, 2002.

After receiving a Right to Sue letter from the Equal Employment Opportunity Commission, Plaintiff filed suit in this Court alleging hostile work environment and retaliation claims. In dismissing all of Plaintiff's claims, this Court found that Plaintiff did not exhaust his administrative remedies; did not establish a prima facie case of hostile work environment based on either race or gender; and, could not show that UTMB's legitimate reasons for termination were mere pretext. Plaintiff's claims for intentional infliction of emotional distress, defamation, and negligent investigation were barred by the Eleventh Amendment. Based on prior Orders, each and all of Plaintiff's substantive claims are **DISMISSED WITH PREJUDICE**.

## II. RULE 11 STANDARD

■ Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") requires attorneys and parties to conduct reasonable investigation into the facts and laws surrounding a case before filing a lawsuit or any other paper before a court. *See* Fed. R.Civ.P. 11(b)(1) and (2). These requirements are imposed on legal players to reduce misuse and abuse of the litigation process. *See Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023 (5th Cir.1994). The Rule 11 requirements pertinent to this case are sections (b)(2) and (b)(3), which provide:

(b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,...

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, [and];

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

These duties are affirmative, and compliance with them must be measured at the time the document is signed. *See Childs*, 29 F.3d at 1024. This evaluation is to be an objective one measured against the standard of reasonableness under the circumstances. *See id.; Thomas v. Capital*

*Security Services, Inc.,* 836 F.2d 866, 873 (5th Cir.1988).

■ Although this Court has historically been very reluctant to impose sanctions under Rule 11, the case at hand is one of the most abusive of the system that this Court has seen in its entire thirteen-year tenure. There exists no conception of reasonableness that would justify filing a claim for retaliation and hostile work environment under the facts of this case. Even a minimal investigation into the facts and law of this case would have revealed the abject frivolity of all of Plaintiff's claims. A failure to conduct such an investigation provides appropriate grounds for sanctions against Plaintiff's counsel, Mark Roberts. The utterly groundless offensive allegations and factual contentions supplied in this case also provide an appropriate basis for sanction against Plaintiff Stanley himself.

## III. ANALYSIS

In analyzing and evaluating Defendant's Motion for Sanctions, the Court carefully considered the record in this case as well as Plaintiff's Response and accompanying submissions. Among those submissions are an affidavit from Plaintiff's attorney, Mark Roberts, a letter from Lorrie Clark describing alleged harassment of Plaintiff, an inter-office memo from Brenda Franklin relaying her thoughts surrounding Plaintiff's dismissal, an affidavit dated June 26, 2003 from Brenda Franklin regarding alleged racial discrimination, an unsigned and undated affidavit, purportedly from Margaret Lee, also regarding alleged racial discrimination, and an affidavit dated June 26, 2003 from Plaintiff, describing his experiences at the Larry Gist State Jail.[1]

In his "strongest" argument that he engaged in meaningful investigation before filing this suit, Roberts directs the Court's attention to Clark's letter, Franklin's inter-office memo, and Plaintiff's June 26, 2003 affidavit. Unfortunately, the manifest defects in these purported supporting submissions only underscore the frivolity of this case. Since Plaintiff's affidavit is dated June 26, 2003, and this suit was filed on July 19, 2002, consideration of that affidavit is not appropriate in determining the extent of the investigation conducted by Roberts *as of the filing of the suit.*

The letter from Lorrie Clark is a typewritten narrative describing an incident which occurred on March 25, 1998. Although it is dated March 25, 1998, it is unsigned, and there is no indication as to the identity of the recipient. The bulk of the narrative alleges that Plaintiff was treated in an unprofessional manner while being reprimanded for substandard patient charting. It focuses on the tone of voice used by Plaintiff's supervisor and the open location of the reprimand. But for an unsubstantiated assertion by another disgruntled employee that Plaintiff was inappropriately reprimanded because of his gender, Clark's letter provides absolutely no evidence whatsoever of a hostile work environment based on gender discrimination. The January 22, 2002 memo from Brenda Franklin similarly lacks any value as a basis for this seriously abusive lawsuit. It is a series of assertions and opinions, most of which are utterly irrelevant to the claims alleged in this case.

Roberts also maintains that he "consulted with a registered nurse having administrative authority/duty in a large Houston area hospital regarding disciplinary procedures, administrative protocol, and profes-

---

1. Lorrie Clark, Brenda Franklin, and Margaret Lee were Plaintiffs' coworkers at the Larry Gist State Jail.

sional and ethical duties owed to patients by a nurse." There is no affidavit from this nurse, no statement of the nurse's identity, and no indication why a conversation with him or her is even relevant to the facts in this case. As such, this supposed consultation also provides no evidence that counsel engaged in any *meaningful* investigation of the facts of this case before filing suit.

■ The only other potentially actionable claim stems from Ms. Northen's use of one racially derogatory word. However, the jurisprudence in this Circuit is unmistakably clear that this solitary and contextually explainable use of otherwise offensive language is clearly not grounds for a viable Title VII claim.

While there is *no* substantial evidence supporting Plaintiff's allegations, there is a mountain of evidence documenting Plaintiff's repeated and egregious professional misconduct. The record in this case shows that Plaintiff was given a series of second chances before finally being dismissed. Given that these incidents were well-documented, Plaintiff's counsel either completely ignored their existence or never inquired about them. Either is sufficient to support a finding that he did not conduct a reasonable inquiry into the facts of the case. Plaintiff himself is equally to blame in this regard. As the ultimate authority on his employment history at the Larry Gist State Jail, he clearly knew of his discipline record at the Jail. To assert that the basis for his termination was anything other than his abysmal work record is truly outrageous.

■ Filing this case based on the evidence obtained also shows a manifest disregard for the law governing employee disputes. Although the dismissal of a case on summary judgment is not sufficient to show a violation of Rule 11, the law applicable to these facts, as laid out in the Court's Order Granting Summary Judg-

ment provides absolutely no basis for a wrongful termination lawsuit. Filing it shows either an ignorance of the law or an utter disregard for it, both of which are inexcusable under Rule 11.

## IV. CONCLUSION

■ The Court does not take the imposition of sanctions lightly, and very rarely assesses them. The Court has no desire to impose Draconian costs and is extremely mindful of the detriment that even modest sanctions can affect on a small law practice such as that represented by Mr. Roberts. However, it is equally incumbent on both small and large firms to operate within the bounds of legal ethics. There was virtually no meaningful investigation in this case, and the excuses and defenses offered by Plaintiff and his counsel are utterly wanting in merit. UTMB is a remarkably important institution dedicated to providing much-needed healthcare to a vast medical community. It is currently fighting a severe and genuine economic crisis that has forced budget cuts resulting in the reduction of research, staff, and indigent care. Meritless lawsuits against UTMB are a drain on resources. Moreover, the money spent defending them does not come from a magic money tree. Rather, it is diverted from immensely important and potentially lifesaving programs, and must ultimately be borne by the already severely overburdened taxpayers of the State of Texas. Both this Plaintiff and his attorney, and all others similarly situated, must be made to realize that abusive manipulation of the legal system and attempts to legally extort money from public institutions, with *no* basis in fact or law, must and will be appropriately rebuked.

Defendant has submitted affidavits indicating that its costs to date in defending this case have been $23,460.50. While in

disposing of these sorts of cases, this Court generally requires each party to bear its own taxable costs, expenses, and attorney's fees, the Rule 11 violations in this case not only justify, but require a departure from that traditional practice. After evaluating Defendant's submissions, the Court finds that the amount of time spent by the Attorney General's Office could have been moderately reduced through more efficient use of staff and resources. Accordingly, the Court **GRANTS DEFENDANT'S MOTION IN PART** and **ORDERS** sanctions in the amount of Twenty Thousand and no/100 Dollars ($20,000.00), in total fees and taxable costs, to be payable within thirty (30) days of this judgment to the State of Texas and UTMB. Plaintiff Richard Stanley and his attorney, Mark Roberts, are jointly and severally liable for the full amount of sanctions, and the State and UTMB are invited to take appropriate action in the execution of this Judgment, for which let execution issue if not timely paid. Plaintiff and his attorney are, of course, free to appeal this sanction, but in that event, *both* will be required to file a cash or 10% surety supercedeas bond.

**IT IS SO ORDERED.** As to the issue of sanctions, this is a Final Judgment. All relief not herein granted is **DENIED.** As to all of Plaintiff's substantive claims, treated in previous Orders, each and all are hereby **DISMISSED WITH PREJUDICE**, at Plaintiff's costs, herein provided.